**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BETTY JEAN BROWN,

                Plaintiff,

vs.                                            Case No. 3:16-cv-1018-J-JRK

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                Defendant.
_____/

## OPINION AND ORDER[2]

### I. Status

Betty Jean Brown ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of "injuries from [a] fall" leading to "[b]ack pain," "bilateral knee and arm pain," "neck pain," and "shoulder pain." Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed October 20, 2016, at 62; see also Tr. at 34, 84, 94, 277. On August 2, 2012, Plaintiff filed applications for DIB and SSI, alleging an onset disability date

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed October 20, 2016; Reference Order (Doc. No. 13), entered October 24, 2016.

of May 13, 2012. Tr. at 188-94 (DIB), 195-201 (SSI).[3] Plaintiff's applications were denied initially, see Tr. at 62-71, 82, 110, 111-15 (DIB), 72-81, 83, 116, 117-22 (SSI), and were denied upon reconsideration, see Tr. at 84-93, 104, 125, 126-30 (DIB), 94-103, 105, 131-35, 136 (SSI).

On November 21, 2014, an Administrative Law Judge ("ALJ") held a hearing, during which the ALJ heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 29-61. The ALJ issued a Decision on February 18, 2015, finding Plaintiff not disabled through the date of the Decision. Tr. at 13-24. On June 21, 2016, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On August 9, 2016, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes five arguments, all organized under a broad heading arguing that the ALJ failed to develop the evidence properly. See Plaintiff's Memorandum - Social Security (Doc. No. 16; "Pl.'s Mem."), filed December 23, 2016, at 3. First, Plaintiff argues that "[t]he underlying medical evidence supports greater functional limitations than found by the [non-examining] State Agency medical consultant." Pl.'s Mem. at 3 (emphasis omitted); see id. at 5-11. Second, Plaintiff contends that "[t]he ALJ's reliance upon the outdated opinion of [the] non-examining medical consultant to formulate Plaintiff's [residual functional capacity ("RFC")] is not supported by substantial evidence." Id. at 3 (emphasis

---

[3] Although actually completed on September 10, 2012, see Tr. at 188, 195, the protective filing date of the applications is listed elsewhere in the administrative transcript as August 2, 2012, see Tr. at 13, 226.

omitted); see id. at 11-14.  Third, Plaintiff asserts that "[t]he ALJ erred when he failed altogether to consider Plaintiff's obesity." Id. at 3 (emphasis omitted); see id. at 15-17. Fourth, Plaintiff argues the ALJ erred in "not includ[ing] any mental limitations in his RFC finding, and . . . not explain[ing] why he did not." Id. at 3 (emphasis omitted); see id. at 17-19. Fifth and finally, Plaintiff contends that "[t]he ALJ erred by failing to consider Plaintiff's stellar work history in his credibility assessment." Id. at 3 (emphasis omitted); see id. at 19-21.  On February 21, 2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem.") addressing Plaintiff's arguments.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to affirmed.

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 15-23. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since May 13, 2012, the alleged onset date." Tr. at 15 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: history o[f] torn right rotator cuff status post repair, osteoarthritis of the cervical spine, mild degenerative disc disease of the thoracic and lumbar spines and mild osteoarthritis of the right knee." Tr. at 15 (emphasis and citation omitted). At step three, the ALJ ascertained that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 17 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except she can only occasionally balance, stoop, kneel, crouch and crawl. [Plaintiff] cannot climb ropes, ladders or scaffolds.

Tr. at 17 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that Plaintiff "is capable of performing past relevant work as a Flat Work Finisher [because t]his work does not require the performance of work-related activities precluded by [Plaintiff's RFC]." Tr. at 23 (emphasis and citation omitted). Because the ALJ found Plaintiff is capable of performing her past relevant work at step four, the ALJ was not required to, nor did he, proceed to step five. See Tr. at 23. The ALJ concluded that Plaintiff "has not been

under a disability . . . from May 13, 2012, through the date of th[e D]ecision." Tr. at 23 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted, Plaintiff raises five arguments. The first two arguments both challenge the ALJ's reliance on the opinion of a non-examining state agency consultant in light of medical evidence post-dating the opinion and without obtaining a consultative examination or further expert opinions. They are addressed together. Then, Plaintiff's remaining arguments are addressed in turn.

**A. Non-Examining State Agency Consultant's Opinion (First and Second Arguments)**

Plaintiff argues the ALJ erred in relying on the opinion of state agency non-examining physician Carlos Suarez, M.D. for three main reasons. See Pl.'s Mem. at 5-14. First, Plaintiff contends that she has more functional limitations than Dr. Suarez found and than the ALJ adopted in forming the RFC. Id. at 5-11. Second, she argues that, in light of the medical evidence post-dating Dr. Suarez's opinion, the ALJ should not have relied on it. Id. at 11-14. Third, she suggests "the ALJ should have arranged for a consultative examination, sent the entire file back to the State Agency for review, or requested review of the record and testimony from a medical expert." Id. at 14 (citation omitted).

Responding, Defendant argues that the medical evidence supports the limitations assigned by Dr. Suarez. Def.'s Mem. at 4-5. Further, Defendant asserts it is "inconsequential" that there is medical evidence in the administrative transcript post-dating Dr. Suarez's opinion, because "[t]he amount of medical evidence relating to Plaintiff's physical impairments after that date is sparse, and generally shows either no change or perhaps some improvement in Plaintiff's condition." Id. at 5 (citation omitted). Defending the ALJ's election not to obtain a consultative examination, Defendant argues that the RFC

determination is reserved to the ALJ, and the ALJ is not required to obtain such an examination "as long as the record contains sufficient evidence for the ALJ to make an informed decision." Id. at 7 (citation omitted). Finally, Defendant states that Plaintiff has not made the required showing "of prejudice before remand for further development of the record is warranted." Id. (citation omitted).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling ("SSR") 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

The Regulations establish a "hierarchy" among medical opinions[5] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating

---

[5] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

-7-

physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(e).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

"It is well-established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). "Nevertheless, the claimant bears the burden of proving that he [or she] is disabled, and, consequently, he [or she] is responsible for producing evidence in support of his [or her] claim." Ellison, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a), (c)). While "[t]he [ALJ] has

a duty to develop the record where appropriate[,]" the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007) (citing Doughty, 245 F.3d at 1281). To remand a case for the ALJ's failure to fully develop the record, there must be a showing that the claimant's right to due process has been violated because of such failure. Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995) (citing Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985)). Prejudice exists if the record contains evidentiary gaps which may cause the ALJ to reach an unfair determination due to the lack of evidence, id. at 935, or if "the ALJ did not consider all of the evidence in the record in reaching his decision," Kelley, 761 F.2d at 1540.

Here, the ALJ did not err in assigning "significant weight" to non-examining physician Dr. Suarez's opinion, Tr. at 22, and in electing not to obtain a consultative examination or other expert opinion evidence. Dr. Suarez's opinion was rendered on June 10, 2013.[6] Tr. at 89-92. Dr. Suarez opined regarding Plaintiff's work-related functions, and the restrictions he assigned generally translate into the ability to perform light work with additional limitations (the RFC that the ALJ eventually settled upon). See Tr. at 89-92 (Dr. Suarez's opinion); Tr. at 17 (ALJ's RFC finding). In rendering the opinion, Dr. Suarez reviewed the medical evidence available in the file at the time, the most recent of which being dated January 16, 2013. See Tr. at 90-91 (discussing evidence that Dr. Suarez reviewed). There is evidence

---

[6] Plaintiff urges that Dr. Suarez's opinion should not have been relied upon because Dr. Suarez adopted the findings of a single decision maker. Pl.'s Mem. at 13-14. For the reasons explained herein, the ALJ was on solid ground relying on Dr. Suarez's opinion, along with the balance of the evidence, in determining Plaintiff's RFC. Thus, the fact that Dr. Suarez adopted the single decision maker's findings is inconsequential in this particular case.

in the administrative transcript post-dating January 16, 2013, but overall it does not undermine Dr. Suarez's opinion. See Tr. at 464 (treatment note), 484-87, 490-92, 495-97, 503-05, 508-10, 596-602 (physical therapy records), 488-89, 493-94, 499-501, 506-07, 511-13, 520-21, 526-27, 531-32, 538-49, 554-70, 578-82, 584-95, 603-04, 608, 610-51 (Shands and UF Family Practice admission/discharge notes), 515-18, 522-25, 528-29, 533-36, 553, 573, 576, 609 (lab orders and results).[7] Further, the ALJ's Decision makes clear that the ALJ considered all of the treatment evidence, even evidence that was submitted after the opinion, in determining Plaintiff's RFC. See Tr. at 17-23. The ALJ also noted that "the evidence in total does support in general the conclusion put forth by the State Agency doctor." Tr. at 23. The ALJ's finding in this regard is supported by substantial evidence and need not be disturbed.

Plaintiff argues there was inadequate consideration of her continuing shoulder problems even after she had surgery to repair her rotator cuff. Pl.'s Mem. at 13-14. But, the ALJ's Decision makes clear that he adequately considered Plaintiff's allegations of shoulder problems, and he rejected her subjective complaints about her shoulder as "completely inconsistent with her medical treatment and the objective findings." Tr. at 21. The ALJ thoroughly discussed the medical evidence in this regard. Tr. at 21. The ALJ further stated that "her complaints have not been completely dismissed[;] rather, reasonable restrictions have been accounted for in the [RFC] assessed above." Tr. at 21. Substantial evidence, as cited above, supports these findings. See also Tr. at 442-56 (operative note and follow up treatment).

---

[7] Much of this evidence contains duplicates or partial duplicates of treatment notes and lab results.

Finally, the ALJ did not err in electing not to obtain a consultative examination or other expert opinion evidence. Dr. Suarez's opinion, together with the medical evidence in the administrative transcript, provided enough information upon which to base the RFC determination. And, in any event, Plaintiff has not shown prejudice requiring remand. In sum, the ALJ did not commit reversible error in this regard.

## B. Obesity (Third Argument)

Plaintiff asserts the ALJ erred in failing to adequately consider her obesity and its effects. Pl.'s Mem. at 15-17. Argues Plaintiff, "had [the ALJ] considered Plaintiff's obesity in combination with her degenerative joint and disc disease, it is probable that he would have found her subjective complaints more credible." Id. at 16-17. Defendant counters that Plaintiff did not allege she was disabled due to obesity; the evidence supports the RFC finding despite Plaintiff's obesity; and Plaintiff's speculation regarding the ALJ's credibility finding fails because "Plaintiff does not, and cannot, cite to any objective medical findings supporting this argument." Id. at 8-9.

In 1999, the Social Security Administration deleted obesity from the listing of impairments. See SSR 02-1p, 2002 WL 34686281, at *1; see also 20 C.F.R. Part 404, Subpart P, Appendix 1. Nevertheless, obesity must still be taken into consideration when making the disability determination. See SSR 02-1p at *4-5. Social Security Ruling 02-1p provides guidance on how obesity should be analyzed. See id. at *1. It explains that "obesity may increase the severity of coexisting or related impairments to the extent that the

combination of impairments meets the requirements of a listing." Id. at *5.[8] A claimant's combination of impairments is medically equal to a listing "if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment." Id. Indeed, in some circumstances, obesity by itself may be equivalent to a listed impairment. Id. Because "[o]besity can cause limitation of function," the ALJ should "consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments . . . ." Id. at *6-7.

The ALJ, however, is not required to "make assumptions about the severity or functional effects of obesity combined with other impairments." Id. at *6. "[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) (quotation omitted); see also Kelly v. Comm'r Soc. Sec., No. 6:08-cv-1751-Orl-19DAB, 2010 WL 582771, *15 (M.D. Fla. Feb. 18, 2010) (unpublished) (citations omitted) (recognizing a finding of not disabled has been affirmed "where the record contains no evidence showing that the claimant's obesity affected her ability to perform work-related activities").

Here, although the ALJ's Decision does not specifically address Plaintiff's obesity, the undersigned finds that any error in this regard is harmless. Plaintiff does not articulate any

---

[8] "This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." SSR 02-1p at *5.

additional limitations that are caused by her obesity. See Nichols v. Comm'r of Soc. Sec., No. 6:14-cv-928-Orl-37TBS, 2015 WL 4470301, at *5 (M.D. Fla. July 21, 2015) (unpublished) (observing the same in finding that the ALJ's failure to discuss obesity was not reversible error). Indeed, the most recent treatment notes state Plaintiff's Body Mass Index and weight, but do not diagnose obesity or otherwise attribute any problems or limitations to it. See Tr. at 626-27, 628-29, 634-35, 637, 643, 648. In any event, a review of the administrative transcript as a whole convinces the undersigned that the ALJ took into account Plaintiff's impairments in combination, and "the record does not contain evidence demonstrating that Plaintiff's obesity reduced [her] functional capacity[.]" Nichols, 2015 WL 4470301, at *5 (citing Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005)). Thus, remand for more explicit consideration of obesity would serve no useful purpose and is unnecessary.

## C. Mental Limitations in RFC (Fourth Argument)

Plaintiff argues the ALJ erred in failing to include any mental limitations in the RFC. Pl.'s Mem. at 17-19. According to Plaintiff, "[e]ven mild deficits in the area of concentration, persistence and pace would likely compromise the performance of [the] job [that the ALJ found her capable of performing.]" Id. at 19. Defendant responds that "[s]ubstantial evidence supports the ALJ's finding that Plaintiff's mental impairment is not severe and does not cause more than minimal limitation in Plaintiff's ability to perform the basic mental demands of work." Def.'s Mem. at 9 (citation omitted).

At step two of the sequential evaluation process, the ALJ must determine if a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such

a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). As previously noted, "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter, 791 F.2d at 1547. In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment. See id. A claimant has the burden of proving that her allegations of depression constitute a severe impairment. See, e.g., Nigro v. Astrue, No. 8:06-cv-2134-T-MAP, 2008 WL 360654, at *3 (M.D. Fla. Feb. 8, 2008) (unpublished).

When evaluating mental impairments, the Regulations in effect at the time the Decision was rendered directed the use of a "'special technique' dictated by the PRTF [Psychiatric Review Technique Form] for evaluating mental impairments." Moore, 405 F.3d at 1213 (citing 20 C.F.R. §§ 404.1520a(a)[9]). The PRTF is further described in the introduction to section 12.00 of the listing of impairments. See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(A). In the first step of the psychiatric review technique, it is determined whether a claimant has a medically determinable mental impairment using the criteria in "paragraph A" of the listing of impairments. 20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(A).

Next, if there is a medically determinable mental impairment, the degree of functional limitation resulting from such impairment is ascertained. 20 C.F.R. §§ 404.1520a(c) and

---

[9] The Regulation was substantially amended on March 27, 2017. However, the relevant one for purposes of this appeal was the version in effect from June 11, 2011 to January 16, 2017.

416.920a(c). The degree of functional limitation resulting from a medically determinable mental impairment is ascertained by rating four "broad functional areas" in "paragraph B" of the listings: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(c). The first three broad functional areas are rated using a five-point scale: none, mild, moderate, marked, and severe. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(c). The fourth is rated using a four-point scale: none, one or two, three, four or more. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(c).

After the degree of functional limitation resulting from the claimant's medically determinable mental impairment is rated, the severity of the mental impairment is established. 20 C.F.R. §§ 404.1520a(d) and 416.920a(d). The four broad functional areas "are used to rate the severity of mental impairments at steps [two] and [three] of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. If the first three of the four broad functional areas are rated "none" or "mild," and the forth area is rated as "none," the Commissioner generally concludes that the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).

Here, the ALJ found that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is therefore nonsevere." Tr. at 16. The ALJ then detailed the

-15-

reasons for this finding, Tr. at 16, and found in terms of the four functional areas that Plaintiff has "mild limitation" in activities of daily living; social functioning; and concentration, persistence and pace, with no episodes of decompensation of extended duration. Tr. at 16. The ALJ did not include any mental limitation in the RFC. Tr. at 17.

Plaintiff was diagnosed in June 2014 with "Adjustment disorder with Depressed mood/anxiety." Tr. at 622. There are very few mental treatment records in the administrative transcript. See Tr. at 614-18, 622-23. As the ALJ noted, Plaintiff has "responded well to medication." Tr. at 16 (citing "Exhibit 7F/7," located at Tr. at 614). In sum, the ALJ's mental step two finding and election not to include mental limitations in the RFC are supported by substantial evidence and need not be disturbed. See, e.g., Tr. at 614-18, 622-23.

## D. Work History / Credibility (Fifth Argument)

Plaintiff argues the ALJ erred in failing to consider her "stellar work history" in discrediting Plaintiff to the extent her testimony is inconsistent with the RFC. Pl.'s Mem. at 19 (emphasis omitted). She does so acknowledging that credibility findings are due a certain amount of deference. Id. Defendant responds that the ALJ properly discredited Plaintiff, and the ALJ need not "enumerate every factor [enumerated in the Regulations] in every decision." Def.'s Mem. at 11 (citation omitted).

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be

-16-

expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

Although "credibility determinations are the province of the ALJ," Moore, 405 F.3d at 1212, "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony, Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi) (2008)[10]).

Here, the ALJ applied the right standard. See Tr. at 21 (stating, "After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in th[e D]ecision"). Further, the

---

[10] As noted, some of the Regulations were substantially amended in 2017, including this one, but a version similar to this one was in effect at the time the Decision was rendered and is applicable.

ALJ articulated a number of reasons for discrediting Plaintiff's subjective complaints, see Tr. at 21-22, reasons that Plaintiff does not challenge and are adequate and supported by substantial evidence. That the ALJ did not specifically discuss Plaintiff's work history is not fatal to the credibility determination.

### V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to §1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 28, 2017.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of record